UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ARTOUR ARAKELIAN,

                     Petitioner,                08 Civ. 3224 (RPP)
                                            04 Cr. 447 (RPP)

      - against -

                                       **OPINION AND ORDER**

UNITED STATES OF AMERICA,

                     Respondent.
--------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       On April 1, 2008, Petitioner Artour Arakelian moved to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255, and on August 8, 2008, Petitioner filed

a memorandum of law in support of his petition.  Petitioner contends that 1) he received

ineffective assistance of counsel from Cheryl Sturm, Esq., and 2) that the Court imposed

an unreasonable sentence on him by purportedly failing to consider statistics maintained

by the United States Sentencing Commission for sentences "imposed locally and

nationally on similarly situated offenders."  For the reasons that follow, the petition is

denied.

## 1. FACTUAL BACKGROUND[1]

       In the fall of 2003, Petitioner Artour Arakelian conspired together with others to

form Lexington Royce & Associates (the "Company"), a company designed to fleece

unsuspecting investors of their savings by offering them an opportunity to "invest" in its

---

[1]  These facts are taken from this Court's previous decisions in: United States v. Arakelian, 2005 U.S. Dist. LEXIS 19498 (S.D.N.Y. 2005); United States v. Arakelian, 2005 U.S. Dist. LEXIS 19770 (S.D.N.Y. 2005); United States v. Arakelian, 2006 U.S. Dist. LEXIS 19698 (S.D.N.Y. 2006), and; United States v. Arakelian, 2006 U.S. Dist. LEXIS 25077 (S.D.N.Y. 2006).  See also the Second Circuit's summary order affirming Petitioner's judgment of conviction and dismissing the appeal of the  district court's dismissal of his Petition for a writ of habeas corpus.  United States v. Arakelian, 218 Fed. Appx. 76 (2d Cir. 2007).

"Managed Account Program."  The Company, which held itself out as having a twenty-two year history as a foreign exchange currency dealer, touted this program as a successful pooled fund by which retail investors could engage in foreign currency transactions.

From September 2003 to April 2004, Lexington Royce collected approximately $4 million from investors.  After obtaining these funds, the Company did not invest in foreign currency exchange accounts; rather, the Company transmitted the fraudulently-obtained moneys to foreign bank accounts or to a second sham corporation called 65J, Inc.  Petitioner operated Lexington Royce with a single secretary; unidentified salesmen solicited business for the Company from outside of the office via mobile phone.

Petitioner was arrested on April 14, 2004 and charged in a criminal complaint with wire fraud in violation of 18 U.S.C. § 1343.  On April 29, 2004, Samuel Sloan Weissman, Esq., entered his notice of appearance for Petitioner, and on May 10, 2004, the grand jury indicted Petitioner, charging him with five fraud-related counts.  Weissman appeared with Petitioner at his arraignment, and there, the Court set a trial date of September 27, 2004.  On September 9, 2004, Mr. Weissman requested an adjournment of the trial from the Court, explaining that Richard Jasper, Esq., had been recently retained as co-counsel to assist Mr. Weissman at trial and Jasper needed time to prepare.

On September 15, 2004, the Government filed a superseding indictment containing a conspiracy count and four additional counts of wire fraud.  The superseding indictment also alleged enhancements for losses of over $2.5 million, more than fifty victims, and "sophisticated means" on which the Government would seek the jury's determination.  And on September 29, 2004, the Government filed a second superseding

indictment, to which Petitioner pleaded not guilty.  During the time between the first and second superseding indictments, the Government communicated a plea offer to Petitioner of 46 to 57 months imprisonment under the United States Sentencing Guidelines (U.S.S.G.). After speaking with attorneys Weissman and Jasper, Petitioner rejected the plea offer.

On November 22, 2004, after significant pretrial litigation irrelevant to the current petition, Petitioner pled guilty to Counts One through Ten of the second superseding indictment, without the benefit of a plea agreement.  (11/22/2004 Transcript ("Tr.") 21-27.)  In advance of the plea proceeding, the Government provided Petitioner with a letter pursuant to United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991), which set forth the Government's understanding at that time of the application of the Guidelines to Petitioner's case.  The Government indicated that the adjusted offense level was 32, comprising: 1) a base offense level of 7, 2) an 18-level enhancement for the estimated loss of more than $2,500,000, 3) a four-level enhancement because the offenses involved more than 50 victims, 4) a two-level enhancement because the offense involved sophisticated means, 5) a three-level enhancement because Petitioner was a manager or supervisor in an offense that involved five or more participants, and 6) a two-level reduction for acceptance of responsibility.  Petitioner was projected to have a Guidelines range of 121 to 151 months' imprisonment.

During the plea allocution, the Court ensured that Petitioner was competent to enter a guilty plea; that Petitioner was aware of the charges against him, the maximum penalties he faced as a result of those charges, and the rights that he would be waiving by pleading guilty, and; that there was a factual basis for Petitioner's guilty plea.

(11/22/2004 Tr. 3-16, 21-27; see also Arakelian, 2005 U.S. Dist. LEXIS 19498, at *8.) Petitioner admitted that he "knowingly participated in an agreement with others to obtain money from individuals through a scheme with caused those individuals to make investments in a company called Lexington Royce & Associates," and further, that he "knew that this was wrong." (11/22/04 Tr. 29.) At that time, Petitioner stated that he was satisfied with the representation he had received from Weissman and Jasper, and that he had not received any promises concerning the sentence he would receive. (11/22/2004 Tri. 4-5.) The Court accepted Petitioner's guilty plea to Counts One through Ten of the Indictment, and set sentence for February 23, 2005. (Tr. 11/22/2004 at 32-33.)

On March 3, 2005, relying on United States v. Booker, 543 U.S. 220 (2005), Petitioner filed a lengthy sentencing memorandum in which he requested a sentence of between 24 and 36 months, well below the applicable guidelines. On March 18, 2005, the Government filed a letter objecting to Petitioner's request for leniency, and on March 23, 2005, the parties appeared for sentencing. After extensive colloquy with the Court, Petitioner requested an adjournment, which was granted. In mid-May of 2005, Petitioner submitted two letters to the Court, dated May 13 and 16, regarding his upcoming sentence.

In these letters, Petitioner admitted his knowing participation in the Lexington Royce fraud; conceded that he had rejected the Government's plea offer because he hoped to get even less jail time; and, for the first time, claimed that his attorneys had not represented him effectively. Petitioner also notified the Court that he wished to withdraw his guilty plea. Petitioner further requested the assignment of new counsel because he could not afford new counsel. See Arakalian, 2005 U.S. Dist. LEXIS 19498, at *10-11.

At a conference held on May 18, 2005, Weissman notified the Court that Petitioner had retained Cheryl Sturm, Esq, as his new counsel.  On May 31, 2005, Sturm entered an appearance as Petitioner's new counsel, and on July 12, 2005, Petitioner, represented by Sturm, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241.

The petition asserted that Petitioner had been deprived of his right to effective assistance of counsel at the plea bargaining stage, and that the appropriate remedy for this ineffective assistance by Weissman and Jasper was the imposition of the forty-six month sentence originally offered by the Government during the plea negotiations.  See Arakelian, 2005 U.S. Dist. LEXIS 19770.  In connection with this petition, Petitioner filed a sworn declaration asserting, among other things, that:

> 2. Mr. Jasper said that if I was not going to hire him I should consider taking the plea offer.  He told me I should not go to trial with Mr. Weissman.  I understood Mr. Jasper to mean that if I hire him, he could get me a better plea than 46 months.
>
> 5. If Mr. Jasper had told me the best thing for me to do was to take the 46 month plea offer, I would have taken the offer.

Arakelian, 2006 U.S. Dist. LEXIS 19698, at *9.  The Government responded that a Section 2241 petition was an inappropriate procedure vehicle for bringing such a claim, and further, that Petitioner's factual claims were unworthy of belief.

By order dated September 8, 2005, the Court dismissed Petitioner's Section 2241 petition.  See Arakelian, 2005 U.S. Dist. LEXIS 19770.  Citing a decision issued by the Honorable Denise L. Cote (United States v. Gonzalez, 2001 U.S. Dist. LEXIS 13096 (S.D.N.Y. 2001)), the Court observed that "[p]etitions for habeas corpus pursuant to 28 U.S.C. 2241 do not generally lie prior to sentencing."  Arakelian, 2005 U.S. Dist. LEXIS 19770 at *2-3.  The Court further observed that the petition was inherently defective

because it did not contest the legality of Petitioner's custody, but rather sought reinstatement of a prior plea offer. Id. at *4. The Court did, however, schedule a Fatico hearing to consider Petitioner's ineffective assistance claims concerning the alleged failures by counsel Jasper and Weissman to advise him to accept a plea of 46-57 months imprisonment in September of 2004, and the Court further permitted Petitioner "to file his present papers as a motion pursuant to Section 2255 promptly after sentencing." Id.

On October 20 and 21, 2005, a Fatico hearing was held before this Court. At that hearing, Petitioner conceded that he never intended to go to trial, but rather "wanted to get the best plea bargain as possible" (10/21/2005 Tr. 297), and he admitted that he withheld certain information from his counsel. (10/21/2005 Tr. 294, 302-03.)  In an opinion and order dated April 12, 2006, the Court concluded that Petitioner had obstructed justice by stating falsely in his declaration under oath that he would have taken the Government's plea had he been so advised by his counsel, and also, by misrepresenting the nature of the legal advice he actually received from Jasper. Arakelian, 2006 U.S. Dist. LEXIS 19698, at *9. The Court also ruled that Petitioner was still entitled to a two-level reduction for acceptance of responsibility because he did not commit perjury regarding his criminal conduct, but committed perjury only in an effort to reduce his sentencing exposure.

With particular regards to Petitioner's ineffective assistance claim, the Court concluded that Jasper had provided effective assistance of counsel to Petitioner in connection with the plea discussions, and that while Weissman had failed to give Petitioner "accurate information about his exposure after going to trial," this failure did

not cause Petitioner prejudice because it was Petitioner's "fixation with [obtaining a plea offer of] 37 months" that caused him to reject the [46-57 month] offer."  Id. at *15-16.

On April 27, 2006, Petitioner was adjudicated an adjusted offense level of 31 and a Criminal History Category of I (a Guidelines sentencing range of 108 to 135 months), and after consideration of the factors set forth in 18 U.S.C. § 3553(a), this Court sentenced Petitioner to a term of imprisonment of 108 months. (04/27/2006 Tr. 36-37.)

Petitioner appealed both the denial of his § 2241 petition and his conviction and sentence for wire fraud.  On February 27, 2007, the United States Court of Appeals for the Second Circuit affirmed both orders in a combined summary decision.  United States v. Arakelian, 218 Fed. Appx. 76 (2d Cir. 2007).  On April 1, 2008, Petitioner filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## II. DISCUSSION

In his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Petitioner contends that he 1) received ineffective assistance of counsel from Cheryl Sturm, Esq., and 2) that this Court imposed an unreasonable sentence on him, purportedly by failing to consider statistics maintained by the United States Sentencing Commission for sentences "imposed locally and nationally on similarly situated offenders."  Each of these arguments will be considered in turn.

### A. Ineffective assistance of counsel

In his motion, Petitioner claims that he received ineffective assistance of counsel from Ms. Sturm because 1) she filed on his behalf a 28 U.S.C. Section 2241 motion for habeas corpus that resulted in Petitioner receiving a two-level enhancement for obstruction of justice, and 2) that she failed to move for the withdrawal of his guilty plea.

i. *Applicable Law*

The test for ineffective assistance of counsel is governed by <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668 (1984).   Under <u>Strickland</u>, <u>supra</u>, to establish a claim for ineffective assistance of counsel, a petitioner must demonstrate: 1) that his counsel's performance was deficient, and 2) that counsel's deficient performance prejudiced him. Only if both elements are satisfied can a defendant demonstrate that his counsel "was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that he was, as a result, deprived of a fair proceeding.  <u>Strickland</u>, 466 U.S. at 687.

Under the first prong of <u>Strickland</u>, <u>supra</u>, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  <u>United States v. Aguiree</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689)).  As the Supreme Court cautioned in <u>Strickland</u>, 466 U.S. at 689-90:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Indeed, under <u>Strickland</u>, <u>supra</u>:

> [an attorney's] strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengable; and strategic choices made after less than complete investigation are

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' id. at 690, and may not use hindsight to second-guess his strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see also United States v. Jones, 918 F.2d 9, 11-12 (2d Cir. 1990). Thus, a defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986). Further, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Mason v. Scully, 16 F.3d 38, 42 (2d Cir. 1994).

Even if an attorney's performance was objectively unreasonable and unprofessional, the defendant must also prove prejudice. The defendant "must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). The reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." Mayo, 13 F.3d at 534. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

ii. *Discussion*

Petitioner ascribes error to Ms. Sturm's decision to file a Section 2241 petition on his behalf prior to sentencing, apparently because Petitioner ultimately received an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. Petitioner argues that "had Ms. Sturm raised the ineffectiveness issue via Rule 11(d) instead of through Section

2241 and the Supplemental Sentencing Memorandum, [his sentence] would not have been enhanced for obstruction of justice."  Petitioner relatedly contends that Ms. Sturm should have made a motion via Rule 11(d) to withdraw his plea.

Initially, Petitioner's ineffective assistance of counsel claim fails for the simple reason that Petitioner has not shown that counsel's decision to file a petition under 28 U.S.C. § 2241 was the proximate cause of the obstruction of justice enhancement he ultimately received.  In that regard, as this Court has previously ruled, it was not Ms. Sturm's decision to file a habeas motion that resulted in the obstruction of justice enhancement, rather it was the "statements … in [Petitioner's] July 11, 2004 declaration [that] were intentionally false and perjurious" that resulted in the sentencing enhancement for obstruction of justice.  See Arakelian, 2006 U.S. Dist. LEXIS 19698, at *31.  Indeed, the Court concluded that Petitioner's sworn statements in his Declaration concerning his willingness to accept the Government's plea offer of 46 months were perjurious and amounted to obstruction of justice.  Id. at *9.

Put differently, having affirmatively lied in his declaration to this Court, Petitioner cannot now shift the blame for his own misconduct onto his attorney who represented him in the matter.  See, e.g., United States v. Monzon, 359 F.3d 110, 120 (2d Cir. 2004) (rejecting ineffective assistance of counsel claim premised on counsel's decision to allow defendant, who had lied to counsel, to testify at suppression hearing; finding that "[w]e agree with the district court's conclusion that [attorney] Schmuckler's belief in Monzon's lies did not constitute constitutionally ineffective assistance"); Tyson v. Keane, 159 F.3d 732, 736 (2d Cir. 1998) (holding that, absent a gross failure to investigate a defendant's claim, it is not ineffective of counsel to rely on defendant's

apparently truthful statements when determining trial strategy; "The principal reason why the 'wrong' defense strategy was pursued at trial was not the trial judge's error but Tyson's own conduct, whether characterized charitably as lack of candor or as a lie.") Hence, the sentencing enhancement for obstruction of justice here can be blamed only on Petitioner.

Petitioner's claim also fails on the merits as counsel's decision to file a petition pursuant to Section 2241, while not ultimately successful, did not fall below "an objective standard of reasonableness."  First, at the time counsel filed the petition at issue here, the Second Circuit had not definitively ruled (and still has not ruled) on the issue of whether a defendant can mount an ineffectiveness claim prior to sentencing by means of a Section 2241 petition, and the courts in this District are divided on the issue.  Compare United States v. Gonzalez, 2001 U.S. Dist. LEXIS 13096 (S.D.N.Y. 2001) (answering in the negative) with United States v. Mocombe, 2000 U.S. Dist. LEXIS 3318 (S.D.N.Y. 2000) (allowing challenge to conviction through Section 2241(c) petition to be made prior to sentence, but denying petition on merits); see also Arakelian, 218 Fed. Appx. at 79 (acknowledging that it was an "open" question as to whether a Section 2241 petition can be "used to raise an ineffective assistance of counsel claim prior to sentencing").  In light of these conflicting opinions, it was not unreasonable here for counsel to pursue such an avenue for redress.

Moreover, there was a perfectly good reason why Ms. Strum chose to file a Section 2241 petition instead of a filing a motion to withdraw his guilty plea.  After pleading guilty, Petitioner wanted counsel to vacate the plea and obtain for him the earlier withdrawn plea offer of 46 to 57 months.  But in light of Petitioner's later

concession that he never intended nor wanted to proceed to trial (10/12/05 Tr. 297), the options available to counsel to seek a lower sentence for Petitioner were limited.  Indeed, if Petitioner's motion to withdraw his plea was successful, this would have required him to proceed to trial, which is exactly what he did not want.  Presumably for this reason, counsel sought to use a Section 2241 petition to resurrect an earlier, more favorable plea offer, rather than attempt to proceed to trial.  A contrary strategy by counsel would have been foolhardy in light of the surfeit of evidence of Petitioner's guilt, and further, it would have gone against Petitioner's expressed wishes.

Petitioner also claims that he suffered prejudice because counsel chose to file a Section 2241 petition instead of a motion to withdraw his guilty plea.  However, even if counsel had filed a motion to withdraw Petitioner's plea rather than a Section 2241 petition, it is highly unlikely that counsel would have been successful in obtaining this relief because motions to withdraw guilty pleas are not granted lightly.

"A guilty plea is no mere formality, but a 'grave and solemn act.'"  United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (citing United States v. Hyde, 520 U.S. 670, 677 (1997)).  And while a district court has the discretion, pursuant to Federal Rule of Criminal Procedure 11(d), to allow a defendant to withdraw a guilty plea, the defendant bears the burden of demonstrating valid grounds for relief.  United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (citing United States Maher, 108 F.3d 1513, 1529 (2d Cir. 1997)).

In determining whether a defendant has demonstrated a "fair and justice reason" for withdrawing his plea, "the district court should [1] examine the amount of time elapsed between the plea and the subsequent motion to withdraw, and [2] whether the

defendant's motion to withdraw his plea asserted his innocence,[2] as well as [3] giving due regard to any prejudice the government might suffer as a result." United States v. Karro, 267 F.3d 112, 117 (2d Cir. 2001). Importantly, "the Government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." Torres, 129 F.3d at 715.

To obtain withdrawal of a guilty plea, the defendant must "raise a significant question about the voluntariness of the original plea." Torres, 129 F.3d at 715. A defendant's admissions during a plea proceeding, and any findings made by the judge in accepting the plea, "constitute[ ] a formidable barrier" to challenging the validity of the plea. Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[S]elf-inculpatory statements made under oath at [a] plea allocution carry a strong presumption of verity," Maher, 108 F.3d at 1530, and a district court, in reviewing a claim to withdraw a plea, "must draw all permissible inferences in favor of the government and against the defendant." Id.

Here, there is little chance that this Court would have permitted Petitioner to withdraw his plea. After all, there is no dispute that Petitioner competently, knowingly and voluntarily pleaded guilty. See Arakelian, 2005 U.S. Dist. LEXIS 19498, at *8. The Court ensured during the plea proceedings that Petitioner was aware of the charges against him, the maximum penalties he faced as result of those charges, and the rights that he would be waiving by pleading guilty; and that there was a factual basis for Petitioner's guilty plea. Further, Petitioner had admitted he was guilty of each of the elements of the ten counts of the indictment. And, Petitioner himself testified at the Fatico hearing that he never intended to go to trial and "always intended to take a plea

---

[2] At no point in these proceedings has Petitioner raised an innocence defense.

offer and leave." (10/21/2005 Tr. 297.) Thus, Petitioner had not, and still has not, shown a fair and just reason to mandate the withdrawal of his plea.

Furthermore, more than seven months had elapsed between the date of his plea and Ms. Sturm's motion, and courts deny motions to withdraw under such circumstances. United States v. Schmidt, 373 F.3d 100, 103 (2d Cir. 2004) (affirming denial of motion to withdraw where the guilty plea was made between three and eight months after the defendant obtained information putting him on notice of the irregularities on which the motion was based); United States v. Grimes, 225 F.3d 254, 259-60 (2d Cir. 2000) (affirming denial of motion to withdraw where almost five months passed between the date of the guilty plea and the defendant's first indication that he wished to withdraw it). As the Second Circuit has commanded, the mere change of heart of a defendant, which is what Petitioner's papers evince here, is insufficient to mandate that a Court permit defendant to withdraw his plea. See United States v. Rosen, 409 F.3d 535, 546 (2d Cir. 2005).

Accordingly, Petitioner's ineffective assistance of counsel claim is denied because: 1) Petitioner has failed to show that counsel's actions are the proximate cause of his sentencing enhancement, 2) Petitioner has failed to show that counsel's conduct fell below an "objective standard of reasonableness," and 3) Petitioner has failed to demonstrate prejudice from counsel's performance.

**B. Improper sentencing**

Petitioner also claims that this Court erred in sentencing him to a term of 108 months imprisonment, at the bottom of the applicable Guidelines range, purportedly because it did not consider statistics maintained by the Sentencing Commission regarding

sentences imposed locally and nationally on similarly situated offenders.   Petitioner further asserts that the Court was required to consider significant sentencing disparities between him and others with similar criminal histories and convicted of similar offenses. Petitioner's arguments are rejected.

i. *Applicable Law*

Although the Sentencing Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."   United States v. Booker, 543 U.S. 220, 252 (2005).  In furtherance of that goal, judges are required to "consider the Guidelines 'sentencing range established for … the applicable category of offense committed by the applicable category of defendant, § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3353(a)(1), (3), (5)-(7)." Id. at 259-60.

In light of Booker, supra, district courts are now required to engage in a three-step sentencing procedure.  See United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).  First, the district court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a non-Guidelines sentence." Id. at 112.  Second, the district court must consider whether a departure from that Guidelines range is appropriate.  Id.  Third, the court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose.  Id. at 113.

In <u>United States v. Fleming</u>, 397 F.3d 95, 100 (2d Cir. 2005), the Second Circuit elaborated on a district court's duty to "consider" the factors listed in Section 3553(a):

> no specific verbal formulations should be prescribed to demonstrate the adequate discharge of the duty to "consider" matters relevant to sentencing. As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance, we will accept that the requisite consideration has occurred.

ii. *Discussion*

The Court undertook the precise steps required under <u>Booker</u> and its progeny. At sentencing, the Court reviewed the Guidelines and Section 3553(a), stating "I now pass to 3553(a) which requires the Court to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph two of this subsection." (<u>See</u> 4/27/2006 Tr. 34.) After comparing the nature and circumstances of the offense and Petitioner's history and characteristics -- "[The offense] has a serious effect on a number of people, a number of elderly people. A number of people at that time had very little income and lost everything that they put into this scheme" -- the Court concluded that a Guidelines sentence was appropriate in this case. (04/27/2006 Tr. 34.) However, recognizing that the instant offense marked Petitioner's first criminal conviction, the Court elected to sentence him "to the minimum term of 108 months that the guidelines provide." (04/27/2006 Tr. 36). Hence, this Court fulfilled the requirements of <u>Booker</u>, <u>supra</u>.

Petitioner contends that the Court erred in failing to consider certain statistics maintained by the Sentencing Commission, and notes further that the Court was required to consider "significant sentencing disparities between the defendant and others with

similar criminal histories and convicted of similar offenses." Initially, it is clear that the Court specifically addressed this concern at sentencing, stating:

> I went through the other considerations of 3553(a) and I don't think they apply. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . is very hard to apply because there are no other codefendants in this case. The cases that are mentioned on argument are not particularly close in terms of damages to the victims. . . .

> (Tr. 4/27/2006 at 35-36.)

In support of his current motion, Petitioner attaches a list of sentences handed out in allegedly "similar" fraud cases. (See Petitioner's 08/08/2008 Memorandum of Law, Exhibit H [sentencing comparison chart].) However, the sentences provided by Petitioner fall at various points along the broad spectrum of fraud cases, in that they involved defendants with divergent loss amounts, personal circumstances, and procedural histories. Put simply, the cases provided by Petitioner do not involve "similarly situated" defendants.

The Court's use here of the Guidelines as a benchmark to ensure, among other things, that Petitioner was treated similarly to other defendants involved in analogous fraud schemes was entirely proper. Indeed, the Second Circuit has held that the Guidelines range for a particular defendant is a "benchmark or a point of reference or departure" when considering a particular sentence to impose. United States v. Rubenstein, 403 F.3d 93, 98-99 (2d Cir. 2005). Thus, as the Supreme Court recently stated: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007).

As the Second Circuit has also explained, a "sentencing judge's decision to place special weight on the recommended guidelines range will often be appropriate, because the Sentencing Guidelines reflect the considered judgment of the Sentencing Commission, are the only integration of multiple [3553(a)] factors, and, with important exceptions … were based upon the actual sentences of many judges."  United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006).   The Supreme Court made a similar observation in Rita v. United States, 127 S. Ct. 2456 (2007), where it noted that the Guidelines have been written, in accordance with applicable statutory directives, to achieve "the basic aims of sentencing" set forth in 18 U.S.C. 3553(a).  127 S. Ct. at 2463-64 ("The result is a set of Guidelines that seek to embody the 3553(a) considerations, both in principle and in practice"); id. at 2464 ("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences…"); see also Gall v. United States, 128 S. Ct. at 594 ("[E]ven though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

Here, in sentencing Petitioner, this Court had the benefit of extensive briefing on the sentencing issues, the transcript of a two-day Fatico hearing, and numerous impact statements from the victims of the charged fraud.  It explicitly considered both the nature and circumstances of the offense (e.g. a fraud that looted scores of victims of more than $4 million that had been set aside for, among other things, retirement, children's educations, and medical expenses), and the history and characteristics of the defendant (in particular the fact that the instant offense represented the defendant's first conviction).

Having adhered to the procedure set forth in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), and its progeny, this Court imposed a substantively and procedurally reasonable sentence at the bottom of the correctly calculated Guidelines range.

Lastly, Petitioner ascribes fault to Ms. Sturm's decision not to pursue certain sentencing arguments that had been previously raised by prior counsel. However, the Government's sentencing submission clearly explained why downward departures on the bases advanced by prior counsel were unwarranted under the governing law. (See Government Letter of March 18, 2005 at 17-24.) Moreover, counsel's decision on what specific factors to pursue at sentencing falls into the category of "strategic decisions" that cannot support an ineffectiveness claim. See United States v. Habbas, 527 F.3d 266, 274 (2d Cir. 2008) (Strickland test governs counsel's performance at sentencing).

In sum, Petitioner has offered no basis to disturb this sentence.

IT IS SO ORDERED.

Dated: New York, New York
       January 28, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Order sent to:

*Petitioner Pro Se:*
Artour Arakelian
#56202-054
BSCC, Airpark Unit
3700 Wright Ave.
Big Spring, TX 79720

*Counsel for the Government:*
Michael J. Garcia, Untied States Attorney
Southern District of New York
Attn: Katherine Polk Failla / Marc Litt
One St. Andrew's Plaza
New York, NY 10007
Tel: (212) 637-2324